[No. 8674. Department One. August 8, 1910.]

R. W. CAYWOOD, *Appellant*, v. SEATTLE ELECTRIC COMPANY, *Respondent.*[1]

TRIAL—INSTRUCTIONS—ISSUES—EVIDENCE. An instruction relating to continuous snow and freezing weather is warranted by the evidence that dry snow began at 6:30 o'clock in the morning and continued until 6 o'clock in the evening, and that the highest temperature during the day was 22 degrees.

TRIAL—INSTRUCTIONS—ASSUMPTION OF FACTS. An instruction as to the rule to be applied by the jury "if they find" that there was continuous snow and freezing weather during the day does not assume that such was the fact.

TRIAL—INSTRUCTIONS—TAKING QUESTION FROM JURY. The question of negligence on other points is not taken from the jury by an instruction which states that a special finding will be submitted on one question, where the other questions were submitted on other instructions.

CARRIERS—PASSENGERS—CONTRIBUTORY NEGLIGENCE. Where a passenger on a street car has signaled the conductor to stop and the signal has been answered before he left his seat, he cannot justify his leaving the seat while the car was traveling at a high rate of speed by the fact that it was sometimes necessary for passengers to leave their seats in order to attract the attention of the conductor.

CARRIERS—PASSENGERS—NEGLIGENCE—SNOW AND ICE ON STEPS. It is not evidence of negligence that snow and ice accumulated on the steps and at the entrance of a street car between the time a passenger boarded the car in the down town district and the time he reached his destination.

Appeal from a judgment of the superior court for King county, Gay, J., entered September 15, 1909, upon the verdict of a jury rendered in favor of the defendant, in an action for personal injuries sustained by a passenger in alighting from a street car. Affirmed.

*Reynolds, Ballinger & Hutson*, for appellant.
*James B. Howe* and *A. J. Falknor*, for respondent.

[1]Reported in 110 Pac. 420.

FULLERTON, J.—The respondent owns and operates an electric street railway in the city of Seattle. The appellant, while a passenger on one of the respondent's cars, fell therefrom and received severe and permanent injuries. The appellant conceived that his fall was due to the negligent manner in which the car was operated, and brought the present action to recover for his injuries. As ground of negligence he alleged that it was the custom of the street car company to approach the place at which he desired to alight at such a high rate of speed as to carry passengers beyond it, unless such passengers got out of their seats and took a position in either the space provided in the car for entering and leaving it or on the steps of the car, and that it had become a custom for passengers desiring to alight at the particular station to take one of such positions; further alleging that such custom was reasonably safe when the cars were operated at an ordinary and reasonable rate of speed, and was commonly indulged in by persons of ordinary prudence. He then alleged that the car on which he was riding at the time he received his injuries approached the station in question at a high rate of speed, and that he

"for the purpose of alighting from said car, signalled the conductor to stop said car at said station and, mindful of said custom and because thereof, went back to the entrance of said car to await its arrival at said station, and when said car had reached a point about one hundred and fifty feet from said station plaintiff started to go down upon the steps of said car for the purpose of alighting when the same should stop; that plaintiff was holding firmly to an iron stanchion or pipe dividing said space, with his left hand, and was observing due and proper care and caution for his own safety and was without negligence in the premises, and suddenly, and without warning to plaintiff and at the moment plaintiff started to go down said steps to be in a position to alight from said car when the same should stop, the motorman in charge of said car and of the running and stopping of said car, checked the speed of said car with unnecessary suddenness, causing the same to give a violent, sudden and unnecessary jerk, and suddenly and unnecessarily reducing the speed

of said car from the very high rate at which it had been going to a very low rate of speed, thereby, and by reason of the slippery condition of said entrance to said car and of said steps and the extra hazard caused by said defendant compelling passengers to be at the entrance of said car while in motion in order to alight from said car at said station, plaintiff was violently thrown to the ground by the side of said track; that said ground was frozen, and plaintiff struck upon it. upon his head and arm and right knee, thereby receiving the injuries hereinafter set forth; that said throwing of plaintiff to the ground was in no manner due to any negligence upon his part, but was wholly due to the carelessness and negligence of defendant and its agents and servants in permitting snow and ice to accumulate upon said entrance and steps of said car, and in suddenly checking the speed of said car with unnecessary violence and with an unnecessary jerk, and in compelling passengers desiring to alight at said station to be at the entrance to said car or upon said steps while said car was in motion."

Issue was taken on the allegations of the complaint, and a trial had which resulted in a verdict for the respondent, and a special verdict to the effect that there was no sudden checking of the speed of the car, nor violent, sudden or unnecessary jerk given the car, after the appellant got down onto the car steps for the purpose of alighting. Judgment was entered on the verdict, and this appeal was taken therefrom.

The errors assigned are predicated upon the instructions of the court to the jury. The following were given, to which the appellant excepted:

"In this action I charge you that if you find that there was continuous snow and freezing weather during the day of the accident, the plaintiff would have no right to assume that the evidence of snowstorm would be immediately and effectually removed from the exposed portion of the steps and the entrance to the street car upon which he was riding; that the prevalence of such weather would impose upon the plaintiff such extra care to look out for his safety as an ordinarily prudent and careful person would exercise under like circumstances, and if he failed to exercise such care and was injured through such failure, then he is not entitled to recover.

"In other words, gentlemen of the jury, you must find one thing in this case before you can return a verdict against the company, and that one thing that you have to find is, 'was said car stopped or operated in such a way as to cause a sudden jerk, and through that sudden jerk was plaintiff thrown to the ground?' and on that one matter the court is going to submit to you, at the request of the respondent company, a special finding."

It is objected that the first instruction is misleading because based upon the assumption that a snowstorm was prevailing upon the day of the accident, whereas, in fact, no such storm was then prevailing. The witness, an observer at the United States Weather Bureau, at the page in the record cited by counsel to show the absence of a snowstorm on the day in question, testified as follows:

"The record shows that the dry snow began at 6:30 o'clock in the morning and continued until six o'clock in the evening. And the total precipitation melted from the snow for the day was eight hundredths of an inch. At five o'clock in the evening there was one inch of snow on the ground. At noon a special observation was taken; and up to that time the amount of precipitation melted from the snow fall was six hundredths of an inch. The day was cloudy and cold. The highest temperature reached during the day was 22 degrees, and the lowest temperature was eighteen degrees."

It would seem that this would meet the objection made by counsel even had the court assumed the prevalence of such a storm. But an examination of the instruction will show that the learned trial judge made no such assumption. On the contrary, he left it for the jury to find whether or not there was "continuous snow and freezing weather during the day of the accident," instructing them to apply the rule of law given only in case they found the fact to exist. The record justified the instruction, and we find no error therein.

To the second quoted instruction it is objected that it took from the jury the questions of negligence arising from the fact that passengers desiring to alight at this station were compelled to arise and go to the entrance way and steps of

the car in order to prevent being carried beyond it, and the fact that snow and ice had been permitted to accumulate on the steps and in entrance way to the car at the time of the injury. We think, however, there was no error here. That it was not the purpose of the court to withdraw these questions from the jury is made clear by the fact that it submitted the very questions to their determination in other instructions in which the point for decision was stated with such accuracy as to meet with the approval of both sides.

But if it can be said there is a possibility that the jury were led to believe that their right to consider these questions depended upon the view they took of the question specially submitted, we still find no ground for reversing the judgment. It is made clear by the evidence that the appellant was not compelled to resort to the alleged custom in order to attract the attention of the conductor on this particular occasion. On the contrary, he himself testifies that the conductor had recognized his indicated desire to get off at the station 'to which the car was approaching and had signalled the motorman to that effect before he had left the inclosed part of the car. He testified further that, notwithstanding he had knowledge of the fact that a signal to stop had been given and that the car was running at a high rate of speed, he proceeded on his way to the entrance and started to go down the steps, before he fell from the car. Under these circumstances he cannot justify his act of leaving his seat and going to the entrance of the car by the fact that it was sometimes necessary for passengers so to do in order to attract the attention of the conductor. He must show that the necessity existed, or that he had the right to think it existed, in the particular case before he can avail himself of the custom.

With reference to the other question, it was testified by the appellant and by one of his witnesses that snow and ice existed on the steps of the car and in the extrance way of the same at the time the appellant fell therefrom, but whether much or little was not stated. Nor was there any evidence tend-

ing to show that it had existed there for any considerable length of time. On the contrary, the evidence that does touch the question is the other way. The appellant himself testified that when he boarded the car in the down town district he saw no snow or ice either on the steps of the car or in entrance way, and thinks there was none. Such snow and ice as had accumulated in these places, therefore, must have accumulated during the passage of the car from the place where the appellant boarded it to the place where he fell therefrom, and as but a trace of snow fell during that trip, the ice and snow must have been brought in by the feet of the passengers who boarded the car between those points. But the fact that some snow and ice may have accumulated by this means is not evidence of negligence on the part of the company. It is not practicable to prevent such a condition when there is snow falling or there is snow upon the ground. As was said in the case of *Riley v. Rhode Island Co.*, 29 R. I. 143, 69 Atl. 338, 11 L. R. A. (N. S.), 523;

"In the case at bar we think it would be unreasonable to hold that it was the duty of the defendant corporation to prevent the step from becoming slippery by the ingress of passengers during the passage of the car along its route. In a climate such as ours the effectual performance of such a duty would at times cause serious inconvenience to the traveling public, and during the continuance of a storm would be impossible. The prevalence of stormy weather and a freezing temperature imposes upon a passenger an extra degree of care, which he cannot expect the carrier to save him from. He must bear his share of the burden of 'the inconstant year.' "

There was, therefore, no evidence in the record justifying a recovery on these branches of the case considered as independent grounds of negligence, and hence there was no error on the part of the court in taking them from the jury, even were it conclusive that the instruction complained of had that effect.

The judgment is affirmed.

RUDKIN, C. J., GOSE, MORRIS, and CHADWICK, JJ., concur.